# NO. 12-14-00073-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH MICHAEL PIERCE,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joseph Michael Pierce appeals his conviction for possession of more than four hundred grams of methamphetamines, for which he was sentenced to imprisonment for seventy years and a fine of $250,000.00. In two issues, Appellant argues that the trial court erred by overruling his motion to suppress evidence, and that his trial counsel rendered ineffective assistance. We affirm.

## BACKGROUND

Texas State Trooper Jeremy Frazier stopped Appellant on Interstate 20 in Smith County for driving on the improved shoulder. During his investigation, Trooper Frazier became suspicious of possible criminal activity. He requested consent to search the vehicle, but Appellant refused. Trooper Frazier then called for a K-9 sniff of the vehicle. The dog alerted. Trooper Frazier and another trooper searched the vehicle and located a large amount of methamphetamine inside a backpack in the back seat.

Appellant was charged by indictment with possession of four hundred grams or more of methamphetamine. He filed a motion to suppress the evidence, challenging the initial stop of the vehicle and his extended detention. After a hearing, the trial court denied the motion to suppress.

Appellant then pleaded "not guilty," and the matter proceeded to a jury trial. The trial court submitted a jury instruction under Texas Code of Criminal Procedure Article 38.23 regarding reasonable suspicion for the initial stop. The jury found Appellant "guilty" as charged and assessed his punishment at imprisonment for seventy years and a fine of $250,000.00. This appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court erred in denying his pretrial motion to suppress. Although he challenged both the initial stop and his extended detention in the trial court, he challenges only the initial stop on appeal.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling is supported by the record

2

and is correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## Governing Law

A routine traffic stop closely resembles an investigative detention. *Powell v. State*, 5 S.W.3d 369, 375 (Tex. App.—Texarkana 1999, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Because an investigative detention is a seizure that implicates the United States and Texas Constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we conduct the inquiry set forth by the United States Supreme Court in *Terry v. Ohio* and determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997).

Under the first part of the inquiry, an officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242-43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id.* at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)). A law enforcement officer may stop and briefly detain a person for investigative purposes on less information than is constitutionally required for probable cause to arrest. *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889). An officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). This is an objective standard. *Id.* Thus, when an officer has a reasonable basis for suspecting that a person has committed an offense, the officer may legally initiate an investigative stop. *See Powell*, 5 S.W.3d at 376 (citing *Drago v. State*, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977)).

Under the second part of the inquiry, the "investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The issue is "whether the police diligently pursued a means of investigation that was

likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 64-65 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 1569, 84 L.Ed.2d 605 (1985)). With regard to a traffic stop, an officer can conduct a license and warrants check. *Id.* at 63. An officer also may ask the driver to exit the vehicle. *See Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd).

**Analysis**

Appellant argues that the evidence found after the initial stop should be suppressed because Trooper Frazier's testimony regarding that instance was based solely on his memory and his report, which was written five days after the event. Appellant notes that the first alleged instance of Appellant driving on the improved shoulder was not recorded by Trooper Frazier's video camera. He further notes that the video recording only shows the vehicle's tires on the line and not on the improved shoulder itself.

Under the transportation code, a driver may drive on an improved shoulder only if he can do so safely and as necessary for one of seven enumerated purposes. *See* TEX. TRANSP. CODE ANN. § 545.058(a) (West 2011). At the suppression hearing, Trooper Frazier testified that he was parked sideways, or northbound, at the scale house on eastbound Interstate 20 in Smith County when he first saw Appellant's vehicle. He testified that he saw Appellant's vehicle cross over the white line on the right side that divides the interstate from the shoulder.

Trooper Frazier stated that Appellant's vehicle crossed the line by a distance of about half the width of the vehicle. The video does not show this action because of the direction the trooper's vehicle was facing at the time. Trooper Frazier pulled out behind Appellant and followed him a short distance. He testified that as he was approaching Appellant's vehicle, Appellant "rode on top of the white line."

The video shows the vehicle very far right in the lane, but does not clearly show the tires' exact relationship to the white line. The video shows no apparent necessity for the vehicle to be on or across the white line. After Trooper Frazier stopped Appellant, the video shows him asking Appellant if he had had anything to drink. Trooper Frazier testified that he asked that question because the vehicle had "crossed over the shoulder several times."

Based on our review of the record, we conclude that the record supports the trial court's implied finding that Trooper Frazier saw Appellant driving on the improved shoulder. The trial court's determination of this historical fact turned on Trooper Frazier's credibility and demeanor.

4

The trial court was the exclusive trier of fact and judge of the witness's credibility. *Maxwell*, 73 S.W.3d at 281. Accordingly, the trial court was free to choose to believe or disbelieve all or any part of his testimony. *See Ross*, 32 S.W.3d at 855. Therefore, we give almost total deference to the trial court's determination of that fact. *See Neal*, 256 S.W.3d at 281. Having given due deference to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress. Accordingly, we overrule Appellant's first issue.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his second issue, Appellant contends that he received ineffective assistance of counsel and asks this court to grant a new trial.

## Standard of Review and Applicable Law

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must show that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712. The appropriate standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712.

Review of a trial counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. We indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. It is

Appellant's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.*; *Tong*, 25 S.W.3d at 712. Moreover, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Rarely is the record on direct appeal sufficiently developed to fairly evaluate the merits of a claim of ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson*, 9 S.W.3d at 813. Appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence in order to prevail. *Tong*, 25 S.W.3d at 712.

**Analysis**

Appellant argues that his trial counsel was ineffective because he failed to request findings of fact and conclusions of law following the suppression hearing. He contends that without these findings and conclusions, trial counsel was unable to adequately prepare for his cross examination of Trooper Frazier at trial. However, the record shows that trial counsel performed a very thorough cross examination of Trooper Frazier, and Appellant does not explain how the trial court's findings of fact and conclusions of law might have changed it.

Appellant further contends that without findings of fact and conclusions of law, appellate counsel is unable to adequately challenge the suppression ruling on appeal. However, Appellant's burden is to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Tong*, 25 S.W.3d at 712. Appellant has not shown any reasonable probability that a request for findings of fact and conclusions of law would have changed the outcome of his trial. *See id.*

Furthermore, the record is silent as to counsel's possible strategic reasons for not requesting findings of fact and conclusions of law. Therefore, we conclude that the record is not sufficiently developed to fairly evaluate whether counsel was ineffective for this omission. *See Bone*, 77 S.W.3d at 833. Accordingly, we overrule Appellant's second issue.

6

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 30, 2015**

**NO. 12-14-00073-CR**

**JOSEPH MICHAEL PIERCE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0648-13)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*