# NO. 12-22-00129-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RUSTY ALTON PEARCE,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Rusty Alton Pearce appeals from his conviction for possession of a controlled substance with intent to deliver. In a single issue, Appellant contends the trial court erred in denying his motion to suppress evidence. We affirm.

### BACKGROUND

On June 17, 2021, Sean McClanahan, a deputy with the Smith County Sheriff's Office, was on stationary patrol with a trainee in northwest Smith County near Tyler State Park. They observed a vehicle leave a RV park known for narcotics activity. The officers followed the vehicle. When they observed the vehicle roll over the white stop line before coming to a complete stop, McClanahan initiated a traffic stop. The driver, Appellant, appeared nervous and admitted that he was on parole for previous drug charges. McClanahan observed items in the vehicle that he believed to be associated with drug activity; however, Appellant denied having drugs in the vehicle and refused to consent to a search. McClanahan then radioed for a dog sniff.

While waiting for the K-9 officer to arrive, McClanahan began filling out a warning for the traffic violation. However, he felt he needed to spend a considerable amount of time watching Appellant. McClanahan was concerned for his trainee's safety because Appellant was not handcuffed. In addition, he felt Appellant seemed inclined to flee. Deputy Alvin Gordon

arrived with his K-9 officer, Blaze, approximately half an hour after the stop began. Blaze alerted, and Appellant admitted he had contraband. A subsequent search of the vehicle revealed a bag of methamphetamine.

Appellant was arrested and charged by indictment with possession of a controlled substance, in an amount more than four grams but less than 200 grams, with intent to deliver. The indictment also contained an enhancement paragraph. Appellant moved to suppress the evidence seized during the traffic stop. Following a hearing, the trial court denied Appellant's motion to suppress. Appellant entered a plea of "guilty" pursuant to an agreement and pleaded "true" to the enhancement paragraph, and the trial court sentenced him to thirty years imprisonment. This proceeding followed.

**MOTION TO SUPPRESS**

In his sole issue, Appellant contends the trial court erred in denying his motion to suppress. Specifically, he urges that the initial traffic stop was unjustified and his continued detention was unconstitutionally excessive.

**Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When ruling on a motion to suppress evidence, the trial court is the exclusive trier of fact and judge of the witnesses' credibility. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Moreover, if the trial judge makes express findings of fact, we view the evidence in the light most favorable to the trial judge's ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When there is not an express

finding on an issue, we infer implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. *See id.*

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 903, 907–08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

**Applicable Law**

To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant can satisfy this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672.

The burden then shifts to the State to establish that the seizure was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An objective standard is used when determining if the officer had a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is whether the officer has "specific, articulable facts that, combined with rational inferences from those facts, would lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* This test also includes the totality of the circumstances. *Id.*

A police officer may stop and detain a motorist who commits a traffic violation within the officer's view. *See Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). In addition, an officer may conduct a temporary detention if the officer has reasonable suspicion to believe that a person is violating the law. *See Ford*, 158 S.W.3d at 492. Reasonable suspicion is dependent upon both the content of the information possessed by the police and its degree of reliability. *See Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416–17, 110 L. Ed. 2d 301 (1990); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).

**The Stop**

In the first part of his issue, Appellant contends that McClanahan lacked a reasonable basis for the initial traffic stop.

Deputy McClanahan testified that he and a trainee were patrolling an area of Smith County known for drug activity. The officers observed a truck exit an RV park known for narcotics activity. McClanahan testified that they eventually initiated a traffic stop after the vehicle failed to stop prior to the white stop line at a stop sign. He further testified that stopping beyond the white line is a traffic violation. McClanahan's dash cam video was admitted into evidence and played for the trial court. McClanahan admitted in his testimony that the video does not clearly show Appellant's vehicle's tires over the white line. However, he testified that he was able to see with his own eyes the vehicle's tires cross over the white line.

To justify the stop, it is not necessary to show that Appellant actually committed a traffic violation; it is sufficient to show that the officers reasonably believed a violation was in progress. *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Drago v. State*, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977)). The evidence demonstrates that McClanahan believed Appellant stopped at a traffic control device, a stop sign, but ahead of the stop line. Under the Transportation Code, an operator of a vehicle shall stop at a clearly marked stop line and failure to do so violates the statute. *See* TEX. TRANSP. CODE ANN. § 544.010(c) (West 2022); *Rodriguez v. State*, No. 03-03-00140-CR, 2003 WL 22249714, at *4 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op., not designated for publication). And the dash cam video does not conclusively contradict McClanahan's testimony, and the trial court was free to determine McClanahan's credibility. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). As a result, the record contains sufficient evidence from which the trial court could reasonably determine that the stop was based on reasonable suspicion that a traffic violation was in progress. *See* TEX. TRANSP. CODE ANN. § 544.010(c); *Green*, 93 S.W.3d at 545.

**The Detention**

In the second portion of his issue, Appellant urges the length of his detention exceeded the reason for the stop and was unreasonable.

McClanahan testified that Appellant appeared excessively nervous during the stop: his carotid artery was pulsing, he transitioned between giving too much eye contact to not enough, he fumbled trying to retrieve his license and registration, he stuttered, he began smoking, and he made an extended phone call. In addition, McClanahan stated that he observed rolling papers and a bag of plastic bags in the vehicle and a butane lighter in Appellant's hand. While all of these items are legal to own, McClanahan testified that they are also consistent with drug paraphernalia. This suspicion was strengthened by the fact that Appellant was seen in a high-crime area and admitted he was previously arrested and on parole for drug charges. Therefore, when Appellant refused consent to search his vehicle, McClanahan called for a dog sniff.

While waiting for the K-9 officer to arrive, McClanahan began filling out the warning form. However, he testified that he had to keep an eye on Appellant while attempting to fill out the paperwork. McClanahan stated that Appellant seemed inclined to flee. In addition, Appellant was standing outside the vehicle and was not handcuffed. Therefore, McClanahan testified he kept a watchful eye on Appellant to ensure the safety of his trainee. Appellant also made a lengthy phone call to his mother during the stop. McClanahan testified that the phone call was lengthy enough that he had to tell Appellant to get off the phone.

McClanahan testified that while Smith County has four K-9 officers, usually only two of them are on duty at a time. The first officer he called was busy on another call. However, that officer called another deputy, Alvin Gordon, to bring his K-9 to McClanahan. Deputy Gordon testified that he was at home in his pajamas when he received the phone call. He stated that he dressed himself, loaded his dog, and arrived as quickly as possible. Gordon and Blaze arrived twenty-nine minutes after the start of the initial traffic stop.

McClanahan's body cam video was also admitted into evidence and played for the trial court.

Appellant contends that McClanahan unconstitutionally prolonged the detention until the dog could arrive. An officer may not prolog a traffic stop beyond the original purpose to bring a drug-sniffing dog to the scene. *See* ***Rodriguez v. U.S.***, 575 U.S. 348, 350-51, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015). However, if an officer develops reasonable suspicion during that time that the detainee is engaged in additional criminal activity, prolonged detention is justified. ***Hass v. State***, 172 S.W.3d 42, 53 (Tex. App.—Waco 2005, pet. ref'd). McClanahan testified that he had specific articulable facts justifying his suspicion for the detention:

5

Appellant's excessive nervousness, potential drug paraphernalia, and criminal history. *See Neal*, 256 S.W.3d at 281 (nervousness is not sufficient alone to establish reasonable suspicion but can factor into analysis); *Coleman v. State*, 188 S.W.3d 708, 718-19 (Tex. App.—Tyler 2005, pet. ref'd) (officer's awareness of appellant's criminal history can justify reasonable suspicion).

Furthermore, the evidence supports a conclusion that McClanahan did not intentionally delay issuing the warning citation. The evidence shows that Appellant delayed the process by placing a lengthy phone call. In addition, McClanahan testified that he could not focus on processing the citation because Appellant's behavior indicated he may flee and he was concerned for his trainee's safety. As a result, the initial purpose of the traffic stop had not concluded before the K-9 arrived. *See Haas*, 172 S.W.3d at 52-4. Furthermore, to the extent Appellant urges that the twenty-nine minutes between the initial stop and the arrival of the K-9 is unreasonable, we disagree. Based on the evidence that the officers attempted to conduct a dog sniff as fast as possible, coupled with McClanahan's reasonable suspicion, the wait time is within constitutional limits. *See Willis v. State*, 192 S.W.3d 585, 589-90, 592 (Tex. App.—Tyler 2006, pet. ref'd) (length of detention not unreasonable when K-9 arrived twenty-nine minutes after initially called); *see also Hammontree v. State*, No. 12-21-00139-CR, 2022 WL 3012438, at *7 (Tex. App.—Tyler July 29, 2022, pet. ref'd) (mem. op., not designated for publication) (additional twenty-four minutes for drug dog to arrive was not unreasonable); *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd) (officers attempted to confirm or dispel reasonable suspicion though drug dog took forty minutes to arrive after requested); *Strauss v. State*, 121 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, pet. ref'd) (detention not unreasonable even though seventy-five minutes expired before drug dog arrived on scene). As a result, the record contains sufficient evidence from which the trial court could find that the detention was not unreasonably prolonged.

## Summary

Because the evidence supports the trial court's findings that there existed a reasonable basis for the traffic stop and that the detention was not unconstitutionally prolonged, we hold that Appellant's Fourth Amendment rights were not violated. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 5, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 5, 2023**

**NO. 12-22-00129-CR**

**RUSTY ALTON PEARCE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-1575-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*